UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EXTENET SYSTEMS, INC.,

                        Plaintiff,

   - against -

VILLAGE OF PELHAM,

                        Defendant.
-------------------------------------------------------------------x

**OPINION & ORDER**

No. 18-CV-5281 (CS)

Appearances:

Christopher B. Fisher
Leanne M. Shofi
Cuddy & Feder LLP
White Plains, New York
*Counsel for Plaintiff*

Kenneth E. Pitcoff
Morris Duffy Alonso & Faley
New York, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court are the motion for summary judgment of Defendant Village of Pelham, (Doc. 19), and the cross-motion for summary judgment of Plaintiff ExteNet Systems, Inc., (Doc. 29). For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

    **A.    Facts**

      The following facts are taken from the parties' Local Civil Rule 56.1 Statements and supporting materials and are undisputed unless otherwise noted.

1. **Parties**

Plaintiff "designs, builds, owns, and maintains distributed networks for use by wireless carriers." (Doc. 21 ("Pitcoff Decl.") Ex. C ("2014 App.") at 1.)[1] To serve its wireless-carrier customers, Plaintiff installs in "the public right of way" "small cells" or "distributed antenna systems" ("DAS"), which typically consist of a "node" comprising "an antenna and equipment cabinet (typically a few cubic feet in volume) mounted to a utility pole, traffic stanchion or street light." (Doc. 30 ("Lambert Decl.") ¶¶ 8-9.) Nodes can accommodate "one or more FCC-licensed carriers to provide network wireless services to a discrete area." (*Id.* ¶ 10.) Several nodes together create a network, which can extend wireless coverage "where a traditional tower is not practical and/or cannot achieve targeted coverage." (2014 App. at 2.) Plaintiff obtained a certificate of public convenience and necessity from the New York State Department of Public Service to "operate in New York State as a facilities-based provider and reseller of telephone service." (Lambert Decl. Ex. 3 at 2.)[2]

The Village of Pelham is a municipality in the State of New York. (Doc. 2 ("Compl.") ¶ 17.) Plaintiff seeks to modify three of its existing DAS installations located on Village-owned rights of way. (Doc. 33 ("D's 56.1 Resp.") ¶¶ 17-18.)

---

[1] These page numbers refer to the page numbers generated by the Court's ECF system because the 2014 Application contains seven exhibits, some of which have multiple exhibits of their own, that are not consecutively paginated.

[2] This page number refers to the page number generated by the Court's ECF system because Exhibit 3 to the Lambert Declaration attaches two letters from the New York State Department of Public Service that are not consecutively paginated.

##### 2. 2014 Application

On August 25, 2014, Plaintiff submitted a letter to the Village Administrator with the subject line "Application for Special Permit for Wireless Telecommunications Facilities." (2014 App. at 1.) Plaintiff stated that it sought to "expand its existing Westchester County distributed antenna system (DAS) into the Village of Pelham Manor on behalf of its current and potential new wireless carrier clients" and therefore requested a "Special Permit" from the Village under Chapter 87 of the Pelham Village Code.[3] (*Id.*) Plaintiff proposed installing one twenty-nine pound antenna and one control cabinet on each of three existing utility poles, (*id.* at 2), "for the use of T-Mobile cellular service," (Pitcoff Decl. Ex. D ("Res.") ¶ 30). These installations would "provide area residents with improved wireless services and eliminate 'dead' spots that previously existed." (2014 App. at 2.) Plaintiff declared that the project met the requirements of § 87-6 of the Pelham Village Code and attached an environmental impact assessment, (*id.* at 18-38), an engineer's declaration and a structural report, (*id.* at 11-16, 101-107), and other information intended to comply with §§ 87-8 through 87-12, including a demonstration of the need for the proposed services in Pelham, (*id.* at 97-98).

The Village's Board of Trustees approved Plaintiff's initial application on December 16, 2014, (Res. at 3), after holding "seven meetings and three public hearings," (D's 56.1 Resp. ¶ 13 (emphasis omitted)), and it issued a Resolution granting the Special Permit, (Res. at 10). The

---

[3] Chapter 87 of the Pelham Village Code governs wireless telecommunications facilities located in the Village. Sections 87-4 and 6 lay out permitting requirements, § 87-7 covers renewal and modification of permits, and § 87-8 contains the standards wireless telecommunications facilities must meet to operate in Pelham. *See* Pelham Village Code §§ 87-4, 87-6 to 87-8.

3

parties entered into an agreement governing Plaintiff's use of the right of way on February 17, 2015. (Pitcoff Decl. Ex. A ("ROW Agreement") at 1-2.)

### 3. 2018 Application

On March 6, 2018, Plaintiff submitted what it called a "Building Permit Application" to the Village's Department of Buildings. (2018 App. at 1.)[4] Plaintiff sought a building permit so it could "replac[e] antennas and add[] equipment at the three existing node locations," thereby making its equipment available for use by Verizon Wireless. (*Id.*) In its application, Plaintiff explained the basis for its belief that its request constituted an "eligible facilities request under FCC regulations." (*Id.* at 1-2.) On the same day, ExteNet's counsel submitted a letter to the Village Administrator contending that the proposed modifications "qualify as a federal eligible facility request" under Section 6409 of the 2012 Middle Class Tax Relief and Job Creation Act, Pub. L. No. 112-6, 126 Stat. 156, 232 (codified at 47 U.S.C. § 1455) ("Section 6409"), and that they "meet the FCC regulations for mandatory approval," (Cuddy Feder 3/6/18 Letter at 10-11.)[5]

On April 9, 2018, the Village's Department of Buildings and Public Works sent a letter to Plaintiff indicating that "the addition of a new carrier . . . must be supported by new/updated documentation of in-kind survey data" because "[t]he data used to support the 2013 [*sic*] of T-Mobile, cannot reasonably establish Verizon has a current gap in coverage." (Senerchia 4/9/18 Letter at 12-13.)[6] The Village instructed Plaintiff to comply with § 87-7(A) of the Village

---

[4] Exhibit E to the Pitcoff Decl. comprises six letters between Plaintiff and Defendant, some of which have multiple exhibits of their own, that are not consecutively paginated. All citations to Exhibit E therefore use the page numbers generated by the Court's ECF system. "2018 App." refers to pages 1-9 of Exhibit E.

[5] "Cuddy Feder 3/6/18 Letter" refers to pages 10-11 of Exhibit E to the Pitcoff Decl.

[6] "Senerchia 4/9/18 Letter" refers to pages 12-13 of Exhibit E to the Pitcoff Decl.

4

Code, which "requires proof that the wireless telecommunications facility continues to fill a significant gap in current wireless telecommunications services in the Village of Pelham." (*Id.* at 12.)

In response, Plaintiff's counsel wrote to the Village Administrator on April 30, 2018, and contended that "ExteNet's modifications to accommodate a second carrier on the DAS are governed by Section 6409(a) . . . and Federal Communications Commission ("FCC") rules regarding the implementation of Section 6409." (Cuddy Feder 4/30/18 Letter at 15.)[7] Plaintiff's counsel argued that "[o]nce ExteNet demonstrates that its proposal is an eligible facility and it will not cause a substantial change to the physical dimensions of the existing DAS, then the Village is required to approve ExteNet's request . . . , notwithstanding any local laws that may include additional or different requirements." (*Id.* at 16.) On May 7, 2018, Plaintiff consented to a two-week extension to May 21, 2018, for the Village to "issue the Building Permit for ExteNet's approved modifications." (Cuddy Feder 5/7/18 Letter at 19.)[8]

By letter received by Plaintiff on May 21, 2018, (*see* D's 56.1 Resp. ¶ 25), the Village denied ExteNet's building permit application on the basis that "ExteNet has failed to provide in-kind survey data required by Village Code section 87-8(A) and has failed to establish that the wireless telecommunications facility continues to fill a significant gap in current wireless telecommunications services in the Village of Pelham," (Senerchia 5/21/18 Letter at 1).[9]

---

[7] "Cuddy Feder 4/30/18 Letter" refers to pages 14-18 of Exhibit E to the Pitcoff Decl.

[8] "Cuddy Feder 5/7/18 Letter" refers to pages 19-21 of Exhibit E to the Pitcoff Decl.

[9] "Senerchia 5/21/18 Letter" refers to page 22 of Exhibit E to the Pitcoff Decl.

B. **Procedural History**

Plaintiff commenced this action on June 12, 2018, and asserted two causes of action. The first claim alleges that Defendant Village of Pelham violated of Section 6409 and 47 C.F.R. § 1.6100[10] by denying and failing to approve an eligible facilities request ("EFR") for modification of an existing wireless tower that does not substantially change the physical dimensions of the tower. (Compl. ¶¶ 48-55.) The second claim alleges that Section 6409 creates a federal right because it requires state and local governments to approve a valid EFR application, and that by failing to approve the Application, the Village has deprived Plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983. (*Id.* ¶¶ 56-66.) Plaintiff seeks under its first claim an order requiring the Village to grant the application, (*id.* ¶ 55), and under its second claim money damages and attorneys' fees, (*id.* at 12).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

---

[10] The parties refer to 47 C.F.R. § 1.40001; the FCC regulation implementing Section 6409 has since been moved to 47 C.F.R. § 1.6100.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

This standard applies to cross-motions for summary judgment. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *C&A Carbone, Inc. v. County of Rockland*, No. 08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014). Generally, in deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121; *see Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014). But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together. *Chartis Seguros*, 3 F. Supp. 3d at 179; *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.* No. 14-CV-3770, 2015 WL 5098119, at *2 (S.D.N.Y. Aug. 31, 2015).

## III. DISCUSSION

### A. Section 6409 and the Tenth Amendment

#### 1. Section 6409

Section 6409 provides

> (a) Facility modifications
> (1) In general
> Notwithstanding section 704 of the Telecommunications Act of 1996 (Public Law 104–104) or any other provision of law, a State or local government may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station.
>
> (2) Eligible Facilities Request
> For purposes of this subsection, the term "eligible facilities request" means any request for modification of an existing wireless tower or base station that involves –
> (A) collocation of new transmission equipment;
> (B) removal of transmission equipment; or
> (C) replacement of transmission equipment.

47 U.S.C. § 1455.

In sum, Section 6409, also known as the Spectrum Act, "limits local authority to bar collocation or other modification efforts" by "forbidd[ing] localities from exercising their zoning authority to deny providers' requests to modify wireless equipment, so long as the proposed modification does not 'substantially change the physical dimensions' of the facility." *Montgomery County v. F.C.C.*, 811 F.3d 121, 125 (4th Cir. 2015) (quoting 47 U.S.C. § 1455(a)(1)). "The purpose and effect of [the statute] is to bar states from interfering with the expansion of wireless networks" by "preempt[ing] local regulation of collocation and bar[ring] states from denying modification applications that meet certain standards." *Id.* at 128; *see Portland Cellular P'ship v. Inhabitants of Cape Elizabeth*, 139 F. Supp. 3d 479, 483 (D. Me.

2015) ("The Spectrum Act preempts State and municipal authority to block the placement of certain wireless equipment on existing structures which already house wireless transmission equipment . . . .").

Pursuant to Congress's direction that it implement the Spectrum Act, *see* 47 U.S.C. § 1403, the FCC issued an Order on October 17, 2014, *In re Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, 29 FCC Rcd. 12865 (Oct. 17, 2014), *codified at* 47 C.F.R. § 1.6100, that, among other things, defines a "substantial change" and prohibits State and local governments from "requir[ing] an applicant to submit any other documentation, including but not limited to documentation intended to illustrate the need for such wireless facilities or to justify the business decision to modify such wireless facilities," 47 C.F.R. § 1.6100(c)(1).

### 2. Anticommandeering

Defendant does not dispute that Section 6409, if valid and applicable, requires it to grant the requested permit, but it contends that the statute violates the anticommandeering principle of the Tenth Amendment "by directing local governments to reach a federally-mandated result when adjudicating permit applications." (Doc. 20 ("D's Mem.") at 4-5.) The Tenth Amendment "confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157 (1992). "[E]ven where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Id.* at 166. This "anticommandeering doctrine . . . withhold[s] from Congress the power to issue orders directly to the States." *Murphy v. NCAA*, 138 S. Ct. 1461, 1475 (2018); *see New York v. Dep't of Justice*, 343 F. Supp. 3d 213, 232 (S.D.N.Y. 2018), *appeal filed*, No.

19-267 (2d Cir. Jan. 28, 2019). Federal regulation violates the anticommandeering principle when it "unequivocally dictates what a state legislature may and may not do." *Murphy*, 138 S. Ct. at 1478.

But "commandeering does not occur when Congress validly preempts state law through the Supremacy Clause." *New York*, 343 F. Supp. 3d at 232. A federal statute implicates preemption when "compliance with both federal and state regulations is a physical impossibility, or where state law impedes the execution of the full purposes and objectives of Congress." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 409 (2d Cir. 2013) (internal quotation marks and citations omitted). A federal statute preempts a state or local law when it (1) "represent[s] the exercise of a power conferred on Congress by the Constitution" and (2) "[is] best read as one that regulates private actors." *Murphy*, 138 S. Ct. at 1479.

A preemption provision "confers on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." *Id.* at 1480; *see id.* at 1481 (federal law "prohibiting state authorization of sports gambling" not a valid preemption because it did not "confer any federal rights on private actors"); *New York*, 343 F. Supp. 3d at 235 (federal law prohibiting state and local governments from restricting their officers from communicating with immigration authorities not a preemption statute because it governed only government entities or officials); *Brackeen v. Zinke*, 338 F. Supp. 3d 514, 541 (N.D. Tex. 2018) (federal law establishing welfare standards for states to follow to "protect[] Indian children" impermissibly "command[ed] states to enforce" the statute and did not "impose any federal restrictions on private actors") (internal quotation marks omitted).

The "most obvious" form of preemption occurs "where Congress expressly states that it is preempting state authority." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57

(2d Cir. 1984); *see Vt. Ry. v. Town of Shelburne*, No. 18-188, 2019 WL 1065022, at *4 (2d Cir. Mar. 7, 2019). When faced with an express preemption clause, the text itself "contains the best evidence of Congress'[s] pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (quoting *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011)).

The Second Circuit has not yet considered the constitutionality of Section 6409. In 2015, the Fourth Circuit upheld the FCC's Order implementing Section 6409 against a Tenth Amendment challenge. *See Montgomery County*, 811 F.3d at 129. In that case, Montgomery County contended that the Order's provision that any application unapproved by a locality within sixty days "shall be deemed granted," 47 C.F.R. § 1.6100(c)(4), directly regulated "the conduct of the locality's legislative power, which the Tenth Amendment prohibits," *Montgomery County*, 811 F.3d at 127-28 (internal quotation marks omitted). The Fourth Circuit held that the regime "comports with the Tenth Amendment" because, among other things,[11] it "ensure[s] that collocation applications are not mired in the type of protracted approval processes that the Spectrum Act was designed to avoid," and it "provides a remedy to ensure that states do not circumvent statutory requirements." *Id.* at 128. Additionally, "the[] applications are granted only by operation of federal law"; therefore, if the approval "bear[s] the imprimatur of any authority, it is federal, and not local." *Id.* at 129. The court thus concluded that "what has occurred here is that the FCC – pursuant to properly delegated Congressional authority – has

---

[11] The Fourth Circuit relied on the premise that the "deemed granted" procedure "does not require the states to take any action whatsoever," *Montgomery County*, 811 F.3d at 129, alluding to the pre-*Murphy* anticommandeering framework that recognized "[a] distinction . . . between affirmative obligations and proscriptions," *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 873 (N.D. Ill. 2018). The Supreme Court in *Murphy* characterized this distinction as "empty." *Murphy*, 138 S. Ct. at 1478; *see New York*, 343 F. Supp. 3d at 234. Even so, as discussed below, the Fourth Circuit also offered other bases for denying Montgomery County's Tenth Amendment challenge.

11

preempted state regulation of wireless towers," which is "entirely permissible under our system of federalism." *Id.*

Section 6409 expressly preempts local laws, including Pelham's Village Code § 87-7(A), which is plain from its text: the statute provides that states "shall approve" eligible facilities requests "[n]otwithstanding . . . any other provision of law." 47 U.S.C. § 1455(a)(1). Defendant argues that this provision nevertheless is unconstitutional because it commandeers state and local governments by mandating that they "shall approve" modifications for EFRs. I disagree. Applying *Murphy*'s framework, Section 6409 is constitutional under the anticommandeering principles of the Tenth Amendment because it "represent[s] the exercise of a power conferred on Congress by the Constitution" and is "best read as [a statute] that regulates private actors." *Murphy*, 138 S. Ct. at 1479.

As to the first prong, in 2012 Congress enacted Section 6409 as part of the Middle Class Tax Relief and Job Act "to encourage the growth of a robust national telecommunications network." *Montgomery County*, 811 F.3d at 124–25. The regulation of a national network implicates Congress's authority under the Commerce Clause. *See Hous., E.&.W. Tex. Ry. v. United States*, 234 U.S. 342, 350-60 (1914) (noting "the complete and paramount character of the power confided to Congress to regulate commerce among the several states"). Accordingly, Section 6409 readily satisfies *Murphy*'s first preemption element.

As for whether Section 6409 is best read as regulating private actors, the Village urges that "the statute 'unequivocally dictates what' a local government 'may and may not do' when adjudicating permit requests" and "is incapable of being violated by non-state actors." (D's Mem. at 5 (quoting *Murphy*, 138 S. Ct. at 1478).) But this position ignores the Supreme Court's admonition in *Murphy* that even where the language of the federal statute "might appear to

12

operate directly on the States, . . . it is a mistake to be confused by the way in which a preemption provision is phrased." *Murphy*, 138 S. Ct. at 1480. The Court must "look beyond the phrasing" to see if the statute "confers on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." *Id.* While the language that a state or local government "shall approve" insubstantial modifications "might appear to operate directly on the States," fairly read it confers on telecommunications companies the right to make such modifications without having to seek local approval. It thus confers a federal right on private actors and properly preempts conflicting state and local laws.

Next, Defendant argues that "[b]y providing that the Village 'may not deny and shall approve' eligibility requests, § 1455 plainly compels the Village's elected officials to exercise their official powers in a way that undermines their accountability to the public." (D's Mem. at 6.) This argument is unavailing. Under Section 6409, "applications are granted only by operation of federal law." *Montgomery County*, 811 F.3d at 129. Accordingly, such grants "bear the imprimatur" of federal authority, *id.*, and "[v]oters who like or dislike the effects of the regulation know who to credit or blame," *Murphy*, 138 S. Ct. at 1477.

Finally, Defendant contends that Section 6409 does not "displac[e] state regulation with comprehensive federal regulation over the same subject matter," but rather "contemplates ongoing state regulation of telecommunications requests while forcing state and local governments to rubber stamp permit approvals at the federal government's behest." (D's Mem. at 6.) But this argument mischaracterizes federal telecommunications regulation generally and Section 6409 specifically. Congress has regulated telecommunication since 1934, and it has expressly preempted state and local laws related to wireless infrastructure permitting since 1996 when it enacted the Telecommunications Act ("TCA") "to provide for a pro-competitive,

13

de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services by opening all telecommunications markets to competition." *Crown Castle NG E. Inc. v. Town of Greenburgh*, No. 12-CV-6157, 2013 WL 3357169, at *12 (S.D.N.Y. July 3, 2013) (internal quotation marks omitted), *aff'd*, 552 F. App'x 47 (2d Cir. 2014) (summary order). The TCA, codified at 47 U.S.C. § 253, "is, at its core, a preemption statute," the purpose of which is to impose some limits on the ability of state and local governments to regulate telecommunications. *Id*.

In 2012, Congress built upon this regulatory foundation by enacting Section 6409 to "streamline[] the process for siting of wireless facilities by preempting the ability of State and local authorities to delay collocation of, removal of, and replacement of wireless transmission equipment." 158 Cong. Rec. E237-04 (daily ed. Feb. 24, 2012) (statement of Rep. Fred Upton). Together, the TCA and Section 6409 occupy a clearly contoured area of telecommunications regulation. Within these contours are certain modification requests. Defendant points to no authority to support the notion that the federal government must "displace" all state regulation in a case of express preemption. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 (4th Cir. 2018) (upholding a statute that "expressly defines the contours of prohibited state activity" against a Tenth Amendment challenge). Accordingly, the Court holds that Section 6409(a) preempts Pelham Village Code § 87-7(A) and is constitutional under the Tenth Amendment.

### B. <u>Section 6409's Application</u>

Plaintiff argues that the Village's actions and ultimate denial of Plaintiff's application violate Section 6409 because the statute required that the Village "may not deny, and shall approve" Plaintiff's EFR. (Doc. 34 ("P's Reply") at 5-6.) Defendant does not dispute that if

14

Section 6409 applies, Plaintiff's application constitutes an EFR and would constitute only an insubstantial modification under the applicable regulation. Rather it contends that, regardless of Section 6409, "ExteNet has a contractual obligation to comply" with Pelham Village Code §§ 87-7(A) and (B) because those provisions are incorporated into the ROW Agreement. (D's Mem. at 8.) Defendant argues that Plaintiff agreed to meet the Village Code requirements, and because it has not done so, it "is not entitled to a permit." (*Id.* at 11; *id.* at 8 (citing *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 307 F. Supp. 2d 565, 583 (S.D.N.Y. 2004) ("[A]lthough the preemption doctrine prohibits parties to a contract from electing to have state law govern over federal law, they nevertheless remain free to include as terms of their agreement state law directives that otherwise would be preempted by federal law."), *aff'd*, 396 F.3d 178 (2d Cir. 2005)).)

This argument is unpersuasive. The parties agreed that Plaintiff would comply with "*applicable* VILLAGE Code provisions, ordinances and administrative rules." (ROW Agreement ¶ 5.4 (emphasis added); *see id.* ¶ 5.5 ("all *applicable* federal and state statutes, regulations and orders, . . . [and] all *applicable* provisions of the VILLAGE Code") (emphasis added).) As discussed above, Pelham Village Code §§ 87-7(A) and (B) are not "applicable" because they are preempted by federal law. Sections 5.4 and 5.5 of the ROW Agreement therefore have no bearing on Plaintiff's application to the Department of Buildings.[12]

Further, even if the ROW Agreement could be interpreted as allowing application of § 87, that would not undermine Section 6409's preemptive effect. In *American Airlines, Inc. v.*

---

[12] Section 5.4 further provides that EFR requests under Section 6409 will be "processed and approved [by the Village] in accordance with condition No. 5" of the Village Board's 2014 Resolution approving Plaintiff's initial installation. (ROW Agreement § 5.4.) Condition No. 5 of that Resolution provides that Plaintiff "may make subsequent immaterial modifications to the

15

*Wolens*, 513 U.S. 219, 228 (1995), the Supreme Court found that federal airline deregulation statutes preempted state consumer protection laws. But it further found that such preemption did not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Id.* Accordingly, a state law breach of contract claim arising from an airline's frequent-flyer agreement could proceed, even though a state consumer protection statute could not be applied to the airline's conduct. *Id.* at 232-33. *Flagg*, on which the Village relies, recognized this principle, noting that "[s]tate laws that become terms of the agreement between the contracting parties are enforceable by a breach of contract action, unless federal law has specifically preempted the breach of contract action as well." 307 F. Supp. 2d at 583. But the instant case is not a breach of contract action. Plaintiff seeks a ruling as to whether the federal statute preempts the Village Code. If Defendant believes that Plaintiff's failure to comply with the Code notwithstanding Section 6409's application constitutes a breach of contract – a conclusion with which the Court disagrees – that would be a claim it could pursue if it chose, but it is not a defense here.

For the reasons stated above, Plaintiff's motion for summary judgment on its Section 6409 claim is granted and Defendant's motion for summary judgment on that claim is denied.

---

wireless communications facility upon notice to the Village but without further application to the Board of Trustees," although it had to obtain required permits from other Village departments. (Res. at 11.) It is not clear what these provisions intended to accomplish, or why condition No. 5 used the term "immaterial" when Section 6409 refers to changes that are not "substantial[]," and neither party has shed light on the subject. But it would appear at least that the parties were acknowledging the applicability of Section 6409, which in turn would connote the inapplicability of Pelham Village Code §§ 87-7(A) and (B).

### C. Plaintiff's § 1983 Claim

Plaintiff alleges a § 1983 claim for "compensatory damages, punitive damages, attorneys' fees and costs" based on the Village's denial of its Section 6409 permit application. (Compl. at 12.) Such a claim requires a plaintiff to show that the defendant, acting under the color of state law, deprived the plaintiff of a right secured by the Constitution and the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). If the cause of action is not based on a constitutional violation, "a plaintiff must assert the violation of a federal right, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

"'[A] claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law'" under § 1983 because "'[a] claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity.'" *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 149 (2d Cir. 2006) (quoting *W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 817 F.2d 222, 225 (2d Cir. 1987)) (second alteration in original). Whether that federal law "gives rise to a right enforceable under § 1983 is a different matter." *Id.*

Statutory language is "rights-creating" for § 1983 purposes where "Congress intended to confer individual rights upon a class of beneficiaries." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2003). "Congress must have intended that the provision in question benefit the plaintiff," which hinges on whether the statutory text is "phrased in terms of the persons benefited"; "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; and "the statute must unambiguously impose a binding obligation on the States." *Loyal Tire*, 445 F.3d at 149-50 (internal quotation marks omitted).

17

Here, Plaintiff contends that Section 6409 grants it a federal right to a building permit and that the improper denial of this permit violates § 1983. I disagree. Section 6409 fails the first prong of the test: it is not "phrased in terms of the persons benefited." *Id.* at 149 ("The statute, which provides that a state or municipality may not 'enact or enforce' certain kinds of laws governing motor carriers of property, 49 U.S.C. § 14501(c)(1), is not phrased in terms of the persons benefitted.") (internal quotation marks omitted). Rather, it is phrased in terms of what the state or municipality may not and must do. Thus, it may not be enforced via § 1983. *Cf. NextG Networks of NY, Inc. v. City of N.Y.*, 513 F.3d 49, 52-53 (2d Cir. 2008) (no enforcement via § 1983 of federal statute saying no state or local law or requirement may prohibit entity from providing telecommunications services, because court read language "as intended to place limits on state and local governments, rather than as intended to benefit an identified class of putative plaintiffs").[13] Accordingly, Defendant's motion for summary judgment on the § 1983 claim is granted and Plaintiff's motion for summary judgment on that claim is denied.

### D. **Plaintiff's Remedy**

Plaintiff here seeks injunctive relief – specifically, "an order and judgment reversing the Denial and granting Plaintiff's Section 6409 EFR." (Compl. ¶ 55.) Section 6409 does not specify a remedy but, "[i]n the majority of [TCA] cases, the appropriate remedy . . . is an order requiring the locality to issue the permit sought." *Crown Castle*, 2013 WL 3357169, at *21; *see Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) ("[T]he majority of

---

[13] The only other court to have addressed whether Section 6409 can be enforced via § 1983 held that it cannot, albeit on different reasoning. *See Bd. of Cty. Comm'rs v. Crown Castle USA, Inc.*, No. 17-CV-3171, 2018 WL 6620760, at *9 (D. Colo. Dec. 18, 2018) (FCC enforcement scheme in 47 C.F.R. § 1.6100 precluded § 1983 remedy) (citing *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005)).

district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits."); *Orange Cty.-Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 84 F. Supp. 3d 274, 294 (S.D.N.Y.) (same) (internal quotation marks omitted), *aff'd sub nom. Orange Cty.-Cty. Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 632 F. App'x 1 (2d Cir. 2015) (summary order). The Court finds that injunctive relief is appropriate in this case.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment is DENIED as to Plaintiff's first cause of action and GRANTED as to Plaintiff's second cause of action. Plaintiff's cross-motion for summary judgment is GRANTED as to its first cause of action and DENIED as to its second cause of action.

Defendants are hereby ORDERED to grant Plaintiff's application for a building permit, attached as Exhibit B to Plaintiff's Complaint, and to issue the permit.

The Clerk of Court is respectfully directed to terminate the pending motions (Docs. 19, 29), enter judgment for Plaintiff on its first cause of action and for Defendant on Plaintiff's second cause of action, and close the case.

**SO ORDERED.**

Dated: March 27, 2019
      White Plains, New York

                                                    _____
                                                    CATHY SEIBEL, U.S.D.J.